NEW YORK AND NEW JERSEY MAUSOLEUM COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 36687.     Promulgated May 19, 1932.

*Allen G. Gartner, Esq.*, and *Edward I. Sproull, C. P. A.*, for petitioner.

*C. A. Ray, Esq.*, for the respondent.

130

OPINION.

ARUNDELL: The statutes of New Jersey contain the following provisions:

No mausoleum, vault or crypt or structure so erected as aforesaid shall be used for the purpose of interring or depositing therein any dead body until a trust fund shall have been established and set apart, in accordance with the laws regulating trust funds in this State, amounting to not less than ten per centum of the total cost of the structure; the interest, and that only, to be used for the perpetuation of said building; but this clause shall not apply to private mausoleums or temporary receiving vaults. [Chap. 233, Laws of New Jersey, 1916.]

Petitioner claims that this statute, coupled with the terms of the sales of space in the building, imposed a trust upon its assets in an amount equal to 10 per cent of the additions made to the mausoleum from 1921 to 1924, inclusive, and following *Evergreen Cemetery Association of Chicago*, 21 B. T. A. 1194, such percentage of the construction costs each year is excludable from gross income or sales. It is contended, in the alternative, that the amount of $10,000 paid in 1924 on the loan of $15,000 made in 1921 is deductible from gross income in the taxable year.

In the *Evergreen Cemetery Association* case, *supra*, there was a state statute providing for setting aside as a trust fund a portion of the " money received from the sale of the lots." In *Troost Avenue Cemetery Association*, 4 B. T. A. 1169; 21 Fed. (2d) 194, the taxpayer entered into a trust agreement under which it deposited with a trustee a percentage " of the gross amount of money received from the sale of all lands." In *Portland Cremation Association*, 31 Fed. (2d) 843, the taxpayer set aside as a maintenance fund a percentage of " all receipts from the sale of niches, urns and vaults." In all of these cases the maintenance or perpetual care funds were taken out

of receipts from sales, and the amount that went into the trust funds so created was held not to be a part of income, on the theory that it was not subject to the taxpayer's unfettered use, but was received and administered for the benefit of the purchaser. In this group of cases the trust fund bore a direct relation to the taxpayer's sales. A portion of the sale price became impressed with a trust simultaneously with its receipt, and by reason thereof never was income to the taxpayers.

In the present case there was no requirement, either statutory or contractual, that any part of the receipts from sales was to go into a trust fund. If the taxpayer never made any sales it would still be required by the state statute to have on hand a trust fund before the property could be used. The cost of the mausoleum up to the years here involved was something over $200,000, and under the requirements of the law there should have been a trust fund in existence in excess of $20,000. How could this in any way reduce income in subsequent years? The statement in the sales agreement to the effect that the purchase price would provide a perpetual care fund did not obligate petitioner to set aside any ascertainable sum which a purchaser could require to be administered as a trust. As a matter of fact the petitioner never treated any part of the receipts from sales as having been received by it as a trustee. The record is entirely bare of evidence that petitioner created a trust fund with the $15,000 it borrowed in 1921 and left on deposit with the bank as a "special interest fund." Even conceding that the borrowed money could somehow be regarded as a trust fund, it does not appear that there was any relation between that sum and petitioner's income for the year 1921. It is obvious, we think, that the existence of a trust fund does not necessarily affect income one way or another. Such a fund may be created out of donations, surplus, or capital, with no effect whatever on current income. It is only in cases where sums that would otherwise be reflected in income are diverted from the use of the taxpayer, as in the cases above cited, that income is affected. When in 1924 the taxpayer paid off $10,000 of the loan it was merely liquidating a liability, which plainly could not serve to reduce income.

Inasmuch as the state law applicable to petitioner's operations required the maintenance of a trust fund based on cost, and no connection whatever is shown between cost and sales, we are of the opinion that petitioner is not entitled to reduce income from sales by reason of its so-called trust fund. It may be pointed out that during the years 1922 to 1924 petitioner did not in fact either create a trust fund or pay any sums into the special account carried by it at the bank. The petitioner concedes that the book entries made in

the years 1921 to 1924, inclusive, purporting to set aside a sum equal to 10 per cent of the additions and betterments during those years did not alter the income or surplus accounts and were altogether ineffective to accomplish any purpose. It follows that the deductions allowed by respondent based on the cost of additions in the years 1922, 1923, and 1924 were erroneously allowed and should be restored to income.

The pleadings in this case, and the facts developed, make a narrow issue, and we have no occasion to pass upon the question of whether a trust fund actually created pursuant to the New Jersey statute may be recovered as a part of the cost of sales, or through any other method of capital recovery recognized under the Federal taxing acts.

*Decision will be entered under Rule 50.*