WOODLAWN CEMETERY ASSOCIATION, PETITIONER, *v.* COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT.

Docket No. 65207.   Promulgated August 8, 1933.

*J. Robert Sherrod, Esq.,* for the petitioner.
*J. R. Johnston, Esq.,* for the respondent.

884

OPINION.

SMITH: The petitioner's principal contention is that it is entitled to deduct either as an ordinary and necessary business expense or as a loss in the years 1928 and 1929, the amounts paid over in those years to the Union Trust Co. as trustee for the perpetual care fund. The argument is made that the petitioner was under a bind-

ing obligation to the purchasers of lots already sold to provide an adequate fund for perpetual care and also that the establishment of the fund was necessary as a means of meeting competition in the sale of other lots.

Prior to 1928, the petitioner's sale contract contained no specific provision for a fund for perpetual care. All sales of lots were made subject to the petitioner's rules and regulations, which guaranteed the present and future general care of all lots and stated that a portion (no specific portion) of the sale price would be set aside for that purpose. In 1928, after the trust fund had been created, a new sale contract was adopted which provided that approximately 25 cents per square foot of the purchase price of each lot sold would be paid into a perpetual care fund. As to the sales made under the new contract the specified amount of 25 cents per square foot on the lots sold was impressed with a trust upon its receipt and was therefore not income to the petitioner. *Portland Cremation Assn.* v. *Commissioner,* 31 Fed. (2d) 843; *Los Angeles Cemetery Assn.,* 2 B.T.A. 495; *Troost Ave. Cemetery Assn.,* 4 B.T.A. 1169; affd., 21 Fed. (2d) 194; *New York & New Jersey Mausoleum Co.,* 26 B.T.A. 128.

However, as to the prior sales made under the old contract the petitioner was not obligated, either contractually or by law, to set aside any specific portion of the sales price for perpetual care and no part of such income was impressed with the trust. Cf. *Portland Cremation Assn.* v. *Commissioner, supra.*

The amount of $384,000 transferred to the perpetual care fund in 1928 included the $133,500 which the petitioner had in a reserve for perpetual care at the beginning of 1928. We do not know from what source these funds were derived or what percentage of sales, if any, they represented. Presumably the amounts, except the $133,500 already held in reserve, were taken out of general surplus. The question here raised, however, is not whether the amount of $384,000 is includable in gross income as in the years of its receipt by the petitioner, but whether it is deductible from gross income in 1928 because of its transfer irrevocably to the trustee for the perpetual care fund in that year. This question was raised in *Evergreen Cemetery Assn.,* 25 B.T.A. 544, but was not there decided, the facts proved in that case having been found insufficient to support a conclusion upon the question of law. A similar question was considered in *New York & New Jersey Mausoleum Co., supra,* where we said:

\* \* \* The cost of the mausoleum up to the years here involved was something over $200,000, and under the requirements of the law there should have been a trust fund in existence in excess of $20,000. How could this in any way reduce income in subsequent years? The statement in the sales

agreement to the effect that the purchase price would provide a perpetual care fund did not obligate petitioner to set aside any ascertainable sum which a purchaser could require to be administered as a trust. As a matter of fact the petitioner never treated any part of the receipts from sales as having been received by it as a trustee. The record is entirely bare of evidence that petitioner created a trust fund with the $15,000 it borrowed in 1921 and left on deposit with the bank as a "special interest fund." Even conceding that the borrowed money could somehow be regarded as a trust fund, it does not appear that there was any relation between that sum and petitioner's income for the year 1921. It is obvious, we think, that the existence of a trust fund does not necessarily affect income one way or another. Such a fund may be created out of donations, surplus, or capital, with no effect whatever on current income. It is only in cases where sums that would otherwise be reflected in income are diverted from the use of the taxpayer, as in the cases above cited, that income is affected. When in 1924 the taxpayer paid off $10,000 of the loan it was merely liquidating a liability, which plainly could not serve to reduce income.

Inasmuch as the State law applicable to petitioner's operations required the maintenance of a trust fund based on cost, and no connection whatever is shown between cost and sales, we are of the opinion that petitioner is not entitled to reduce income from sales by reason of its so-called trust fund. * * *

We are of the opinion that the amounts transferred to the perpetual care fund in 1928 and 1929 in excess of 25 cents per square foot on the lots sold during those years are not deductible either as ordinary and necessary business expenses of those years or as losses. The petitioner is entitled to deduct in each year as a business expense the amount actually paid out by it during such year for the care of the lots, but to the extent that the amounts paid into the trust fund in 1928 and 1929 represented a capital reserve or trust fund for future care of the lots they were in no sense an expense of the taxable years before us. There is no authorization at law for the deduction of the amounts set aside out of its earnings of prior years, or out of its current earnings, in excess of its contractual obligation, for the care of lots in future years. Income must be computed upon an annual basis and the tax liability of each year must be determined with reference to the receipts and expenditures of that year. *Burnet v. Sanford & Brooks Co.*, 282 U.S. 359.

There was no element of a loss in the transaction by which the amounts in dispute were transferred to the trust fund. The entire net income from the fund was to be used in the care of the lots. This was an annual expense which the petitioner was obligated to meet in some manner. If there had been no trust fund established for that purpose, then the petitioner would have been required to pay the cost each year out of its own funds.

The petitioner in his brief refers to section 11166, Michigan Compiled Laws, 1915, which reads as follows:

Sec. 7. It shall be the duty of such board of directors to preserve good order in the grounds of such cemetery; to provide for the laying out and embellishing of the same, and to see that they are well kept and in good condition. When the payments for lands purchased shall have been fully made, to reserve at least two-thirds of all the receipts of such corporation which shall be derived from the sale of burial rights after the payment of the current expenses for interest, improvements, and embellishing, until the aggregate amount thereof shall, in the opinion of said board, be sufficient to constitute a permanent fund which, when invested, shall produce an income large enough to meet the expense of keeping the grounds of such cemeteries perpetually in good condition after the same shall have once been properly laid out, improved, and embellished according to the plan thereof; to invest the receipts to be reserved as aforesaid in the bonds of the United States, or of the state of Michigan, or of municipal corporations of this state, and to use the income thereof only for the purposes aforesaid; to cause to be issued scrip or certificates to each subscriber to the articles of the association, which certificates shall specify the amount paid into the capital stock by such subscriber. Such script shall be personal property and transferable by the holder thereof, under such regulations as the board of directors may adopt; to make a report to the annual meeting of the condition of the association, and its receipts and disbursements for the previous year.

The evidence does not indicate, however, that the petitioner set aside the amounts in question in compliance with this provision of the Michigan law. The same law was in effect in prior years. Its effect, if any, on the petitioner's taxable income was to impress a trust upon a portion of the receipts from the sale of lots in those years, removing such amounts from petitioner's taxable income. See cases cited above.

Since the disallowance of the deduction of the $284,000 item in 1928 offsets the claimed net loss of that year of $92,864.18, there is no net loss which may be carried forward in 1929.

The petitioner claimed the deduction in its 1929 return of $71,000 represented the total of additional amounts transferred to the perpetual care fund in that year. The respondent allowed the deduction of $13,959.37 representing 25 cents per square foot on the lots sold during the year, which amount the petitioner was obligated under the sales contracts to pay into the perpetual care fund. The balance, $57,040.63, was disallowed as a deduction. This adjustment was correctly made. Of course, as shown by the deficiency notice, the amount of $13,959.37 was not deductible as a business expense but was excluded from gross income because received by the petitioner in trust for the benefit of the lot owners.

The petitioner also alleges error on the part of the respondent " in including in taxable income interest from tax-exempt municipal bonds in the amount of $19,700.22." During 1929, the petitioner expended in caring for the lots $25,110.91 which it claimed as a deduction in its return for that year, but it did not report in its

888

return the above amount of $19,700.22 received from the perpetual care fund. What the respondent actually did, as shown by the deficiency notice, was to charge back to income, or disallow as a deduction, $19,700.22 of the amount of $25,110.91 claimed in the return. The deficiency notice states:

5. Since the income received by the trustee from the perpetual care fund was turned over to the Cemetery Company to take care of expenses of maintenance and upkeep of the cemetery and does not constitute income to the corporation such portion of the expenses is thereby offset and does not constitute an allowable deduction from income.

It is not material whether the income received by the petitioner from the perpetual care fund is exempt as income from tax-free securities or not. The petitioner is entitled to deduct from gross income for perpetual care only the expense borne by it. To the extent that the cost of perpetual care was reimbursed to it by an amount received from the perpetual care fund the expense was not borne by it. And if the amount thus received is not reflected in petitioner's gross income, the cost of perpetual care must be reduced *pro tanto*. See *Glendinning, McLeish & Co.* v. *Commissioner*, 61 Fed. (2d) 950, in which the Circuit Court of Appeals for the Second Circuit held that deductions claimed in 1922 to 1926 as ordinary and necessary expenses should be disallowed because the contract under which the payments represented by the deductions were made provided for repayment to the plaintiff of such amounts. The respondent's action on this point is sustained.

*Judgment will be entered for the respondent.*